UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LYNAIRE STANTON and FRANK STANTON, | : : : | |
| Plaintiffs, | : : | |
| v. | : : | CASE NO. 3:19-CV-1093 (JAM) |
| STEVENS TRANSPORT, INC., and CHRISTOPHER NAPOLITANO | : : : | |
| Defendants. | : : | |

## ORDER RE: MOTION TO COMPEL RESPONSES TO DEPOSITION QUESTIONS

I.  The Factual and Procedural Background

Plaintiffs, Lynaire Stanton and Frank Stanton (hereafter, "plaintiffs"), bring this action for personal injuries against defendants Christopher Napolitano (hereafter, "Napolitano") and Stevens Transport, Inc. (hereafter "Stevens Transport"). Plaintiffs allege that, on May 8, 2018, defendant Napolitano was driving a vehicle owned by Stevens Transport on Interstate 91 northbound in New Haven, Connecticut, when he rear-ended the vehicle in which the plaintiffs were passengers, causing them to sustain personal injuries.

Defendants retained counsel on the day of the accident and counsel interviewed Napolitano on the same day regarding the circumstances of the accident. During the course of on-going discovery, plaintiffs conducted the deposition of Napolitano and, during the deposition, plaintiffs' counsel learned that Napolitano had multiple meetings regarding the circumstances of the accident with Stevens Transport's Director of Safety, Kip Gandy (hereafter, "Gandy"), and Stevens Transport's Vice President of Risk Management, Bill Tallent (hereafter, "Tallent"). Defendants' counsel was not present for these meetings. When plaintiff's counsel inquired as to

what Napolitano told Gandy and Tallent in these meetings regarding the circumstances of the accident with the plaintiffs, defendants' counsel invoked the work-product privilege and directed Napolitano not to answer.  Similarly, when plaintiffs' counsel inquired in Gandy's deposition about Napolitano's statements in these meetings regarding the manner in which the accident occurred, defense counsel again invoked the work-product privilege and instructed Gandy not to answer.

Plaintiffs now seek to compel Napolitano, Gandy and Tallent to answer these questions and both parties have asked the Court for a ruling on the applicability of the work-product privilege in this context.  Plaintiffs do not seek to elicit any deposition testimony regarding defense counsel's interview of Napolitano on the date of the accident.  For the reasons set forth below, the Court finds that the work-product privilege does not apply in the context of Napolitano's description of the accident in his meetings with Gandy and/or Tallent, and GRANTS the motion to compel such that plaintiffs' counsel may properly inquire as to Napolitano's statements as to the circumstances of the accident in his meetings with Gandy and/or Tallent, that plaintiffs may also resume the deposition of Napolitano solely to inquire what he told Gandy and/or Tallent in those meetings regarding the manner in which the accident occurred and compels Napolitano to answer.

II. The Work-Product Doctrine

In *Hickman v. Taylor,* 329 U.S. 495 (1947), the Supreme Court held that notes taken by the defendant's attorney during interviews with witnesses to the event that gave rise to the lawsuit were not discoverable by the plaintiff. *Hickman*, 329 U.S. at 508. The Court explained,

> In performing his various duties, [] it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he . . . prepare his legal theories and plan his strategy without undue and needless interference.

*Id.* at 510–11.

"[T]he work-product doctrine [also] shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles*, 422 U.S. 225, 238 (1975). "An attorney's protected thought processes include preparing legal theories, planning litigation strategies and trial tactics, and sifting through information." *In re Steinhardt Partners, L.P.*, 9 F.3d 230, 234 (2d Cir.1993). "The purpose of the [work-]product doctrine is to establish a zone of privacy for strategic litigation planning and to prevent one party from piggybacking on the adversary's preparation" and work product. *United States v. Adlman*, 68 F.3d 1495, 1501 (2d Cir. 1995).

Fed. R. Civ. P. 26(b)(3), which codifies the principles articulated in *Hickman*, 329 U.S. 495, provides in pertinent part, "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative…" In short, under Fed. R. Civ. P. 26(b)(3), three conditions must be satisfied to establish work-product protection. The material in question must: "(1) be a document or tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by or for its representative. *In re Grand Jury Subpoenas Dtd. Dec. 18, 1981 and Jan. 4, 1982,* 561 F.Supp. 1247, 1257 (E.D.N.Y. 1982).

"It is axiomatic that the burden is on a party claiming the protection of a privilege to establish those facts that are the essential elements of the privileged relationship ... 'a burden not discharged by mere conclusory [] assertions.' " *In re Grand Jury Subpoena Dtd. Jan. 4, 1984*, 750 F.2d 223, 224–25 (2d Cir. 1984). The party seeking to invoke the privilege can meet their burden "only by an evidentiary showing based on competent evidence." *Bowne of New York City, Inc. v. AmBase Corp.,* 150 F.R.D. 465, 470 (S.D.N.Y. 1993)(citing to *Von Bulow v. Von Bulow*, 811 F.2d 136 (2d Cir. 1987), *cert. denied*, 481 U.S. 1015). "Any ambiguities as to whether the essential elements have been met are construed against the party asserting the

privilege." *Koumoulis v. Indep. Fin. Mktg. Grp.*, 295 F.R.D. 28, 38 (E.D.N.Y. 2013), *aff'd*, 29 F. Supp. 3d 142 (E.D.N.Y. 2014).

      III.    Discussion and Ruling

Here, defendants' claim of work-product privilege fails for two separate reasons. First, by its plain and unambiguous terms, Fed. R. Civ. P. 26(b)(3) extends work-product protection only to "documents and tangible things." Oral communications do not fall directly within the scope of the rule. *See In re Pfohl Bros. Landfill Litig.*, 175 F.R.D. 13, 27 (W.D.N.Y. 1997)("oral communications are not tangible documents for purposes of the work-product doctrine"); *Jiricko v. Coffeyville Memorial Hosp. Medical Center*, 700 F.Supp. 1559, 1565 (D. Kan. 1988)(holding that oral communications was not protected from discovery under work-product privilege).

The Court recognizes that the work-product doctrine may be broader than the strict confines of Fed. R. Civ. P. 26(b)(3). As the Sixth Circuit Court of Appeals has observed, "[a]lthough courts most commonly apply the work product privilege to documents and things, the Supreme Court in *Hickman* made clear that disclosure of the opinions or mental processes of counsel may occur when nontangible work product is sought through depositions, interrogatories, and requests for admission." *United States v. 266 Tonawanda Trail*, 95 F.3d 422, 428 n. 10 (6th Cir. 1996). In keeping with this principle, work-product protection has been extended to verbal communications between attorneys and witnesses. However, even "to the extent that work product privilege is to be extended to verbal communications between a lawyer and a witness, it should be limited to questioning that is either specifically designed to discover the attorney's work product or for some other reason presents a substantial likelihood that a response to the question will result in a significant disclosure of counsel's legal strategy and thought processes." *SR International Business Insurance Co., LTD. v. World Trade Center Properties LLC.*, No. 01CV9291(JSM), 2002 WL 1334821, at *6. (S.D.N.Y. June 19, 2002).

The oral communications as to which plaintiffs seek to elicit testimony here are not communications that would infringe upon attorney work-product. Defendants have not met the burden of demonstrating such. In support of their claim, defendants submitted an affidavit from Tallent (hereafter, "Tallent Affidavit"), ECF No. 89, who avers that the meeting between himself and Napolitano occurred after he was certain that litigation would result from the accident, and after counsel had been retained. However, Tallent does not state in his affidavit that the meetings he and Gandy conducted with Napolitano occurred at the direction of counsel. Tallent also does not indicate in his affidavit that the questions posed to Napolitano in these meetings were provided by defense counsel. Defendants concede that their counsel was not present for these meetings and that counsel had already conducted his own interview of Napolitano on the date of the accident, prior to these meetings. In any event, even if Tallent was arguably acting as an agent of counsel in these meetings, which defendants have not established, plaintiffs do not seek to elicit testimony as to any questions or topics counsel may have directed Tallent and/or Gandy to cover with Napolitano. Nor would the Court permit any such questioning as that would clearly infringe upon the work-product privilege. Plaintiffs seek only to inquire of the substance of Napolitano's statements to Gandy and Tallent as to the circumstances of the accident and how it occurred. Defendants bear the burden of demonstrating that such questioning would compromise attorney work-product. They have not met that burden. In the Court's view, Napolitano's mere description of the factual circumstances of the accident is not likely to reveal the legal theories, opinions, strategies, or mental processes of defense counsel. Accordingly, the oral communications as to which the plaintiffs seek to elicit testimony do not fall within the scope of Fed. R. Civ. P. 26(b)(3), do not implicate *Hickman*, 329 U.S. 495, and are not entitled to attorney work-product protection.

Second, defendants have failed to meet their burden in establishing that the meetings between Napolitano and Tallent and/or Gandy occurred in anticipation of litigation. Materials and documents are prepared in anticipation of litigation if " 'in light of the nature of the document and the factual situation in the particular case, [it] can fairly be said to have been prepared or obtained *because of* the prospect of litigation.' " *U.S. v. Adlman,* 134 F.3d 1194, 1202 (2nd Cir. 1998)(emphasis in original). The court in *Adlman*, 134 F.3d 1194, established that material prepared both for litigation and business purposes may be protected under Fed. R. Civ. P. 26(b)(3). *Id.* at 1195. Whether work-product protection applies turns on whether the material "would have been prepared irrespective of the expected litigation ..." *Id.* at 1204. Indeed, even where "[t]here is little doubt under the evidence that [a party] had the prospect of litigation in mind when it directed the preparation of the" material, *id.* at 1204, or that "such documents might also help in preparation for litigation," *id.* at 1202, work-product protection is not available for "documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of litigation." *Id.* at 1202. In short, the work product rule requires the "existence of a real, rather than speculative, concern." *Gould, Inc. v. Mitsui Mining & Smelting Co., Ltd.,* 852 F.2d 676, 680 (2d Cir. 1987). Whether material was prepared "in anticipation of litigation" requires a determination of the subjective question of whether the preparing party thought it was threatened with litigation and the objective question of whether that belief was reasonable. See, e.g., *Rexford v. Olczak,* 176 F.R.D. 90, 91 (W.D.N.Y. 1997)(citing *Chiquita Int'l Ltd. v. M/V Bolero Reefer,* No. 93CV0167LAP, 1994 WL 263603, at *2 (S.D.N.Y. June 7, 1994)).

Whether materials are protected under this definition is a very fact-specific inquiry, particularly where the materials "in question were created by or for an insurance company in the course of its investigation, since the very business of the producing party is to evaluate claims

that may ultimately ripen into litigation." *Weber v. Paduano,* No. 02CV3392GEL, 2003 WL 161340, at *4 (S.D.N.Y. Jan. 22, 2003). Here, the Court is especially mindful of this principle because it is undisputed that Stevens Transport is a qualified and authorized self-insurer for first-party claims and is, therefore, ordinarily in the business of investigating and evaluating claims asserted against their drivers for personal injuries caused by alleged negligence. *See also Nix v. Holbrook*, No. 5:1302173JMC, 2015 WL 733778, at *3 (D.S.C. Feb. 20, 2015)(noting Stevens Transport's status as self-insured). "Thus, courts presented with work product disputes in the insurance context must be careful not to hold that documents are protected from discovery simply because of a party's 'ritualistic incantation' that all documents created by insurers are made in preparation for litigation, and mindful of the fact that insurer-authored documents are more likely than attorney-authored documents to have been prepared in the ordinary course of business, rather than for litigation purposes." *Weber,* 2003 WL 161340, at *4 (citing *American Ins. Co. v. Elgot Sales Corp.,* No. 97CV1327RLC, 1998 WL 647206, at *1 (S.D.N.Y. Sept. 21, 1998)). As a result, courts often do not find material created during an investigation into the causes and effects of an accident, undertaken soon after the event itself, to be protected work-product, and conclusory claims that the insurer anticipated litigation from the onset of the accident rarely suffice without objective evidence confirming its resolve to litigate. *See, e.g., Tudor Ins. Co. v. Stay Secure Const. Corp.,* 290 F.R.D. 37, 41 (S.D.N.Y. 2013); *Weber,* 2003 WL 161340, at *7; *Mount Vernon Fire Ins. Co. v. Try 3 Bldg. Servs., Inc.*, No. 96CV5590(MJL)(HBP), 1998 WL 729735, at *4–8 (S.D.N.Y. Oct. 16, 1998); *Travelers Cas. & Sur. Co. v. J.D. Elliot & Co., P.C.,* No. 03CV9720(GBD)(HBP), 2004 WL 2339549, at *1–2 (S.D.N.Y. 2004)(permitting deposition of non-testifying expert retained to perform claim processing work and to investigate and assess possible claims by Travelers against third parties for loss recovery). Accordingly, it is incumbent upon Stevens Transport, upon

whom the burden of proof as to work-product privilege falls, to demonstrate by specific and competent evidence that the communications at issue occurred in anticipation of litigation.

The Court concludes that the content of Tallent's affidavit submitted by Stevens Transport to support its invocation of the work-product privilege is insufficient. Tallent states that "[u]pon learning the facts and circumstances related to the subject accident, [he] immediately anticipated that litigation would arise as a result." *Tallent Affidavit* at ¶4. However, Tallent fails to identify the specific facts and circumstances that supported this belief. In the absence of such explanation or detail, the Court cannot make any objective determination if his belief was reasonable. The Court is left with Tallent's conclusory assertion that he anticipated litigation, which is inadequate. Mr. Tallent did explain, and the parties agree, that he retained counsel the day of the accident, that he dispatched counsel to the accident scene and that counsel interviewed Napolitano on that date. *Id.* at ¶7. But, counsel's interview with Napolitano is not at issue. Tallent admits that he later "spoke with the driver involved in the accident personally." *Id.* Presumably, Tallent is referring to the conversations between Napolitano, Gandy and himself which are in dispute. The Court has virtually no information from which to determine whether these conversations took place in anticipation of litigation. It is undisputed that the accident at issue in this matter occurred on May 8, 2018. It is also undisputed that an investigator retained by Stevens Transport or its attorney interviewed the plaintiffs on May 11, 2018, about the accident and any potential injuries. At this time, plaintiffs had not served Stevens Transport with a written notice of intent to sue, nor had plaintiffs threatened a suit. On May 31, 2018, plaintiffs' counsel served a request for preservation of the dashcam footage of the accident upon Stevens Transport. However, it is undisputed that this request did not threaten a suit. Even if this request could be construed as an implicit threat of suit, Tallent has not identified whether his personal meeting with Napolitano occurred before or after this preservation request from plaintiff's

8

counsel. Indeed, Tallent does not identify the dates upon which his meetings with Napolitano took place. In the absence of this information, the Court is unable to conclude whether the meetings between Tallent, Gandy and Napolitano took place in anticipation of litigation.

Furthermore, in his affidavit, Tallent does not identify the purpose of his personal meeting with Napolitano. As the Court has already observed, Tallent did not indicate that the meeting was directed or requested by counsel, that counsel prepared the agenda for the meeting, that counsel dictated the questions to be asked at the meeting or that a summary or report of the meetings was provided to counsel. Counsel did not participate in the meetings at issue. From the four corners of Tallent's affidavit, there is insufficient information for the Court to conclude that these meetings took place for the purpose of investigative and analytical tasks to aid counsel in preparation for litigation.

Tallent attempts to differentiate this particular matter from others by stating that he only becomes personally involved when it is clear that litigation will arise; however, this too offers only his subjective, conclusory assertion. Tallent does not offer any data for the Court to measure the objective reasonableness of this assertion. Indeed, Tallent makes clear that Stevens Transport conducts investigations of all motor vehicle accidents in which its drivers are involved. *Tallent Affidavit* at ¶6. However, aside from his personal participation in a meeting with Napolitano, he fails to identify how the conversations that he and Gandy had with Napolitano differed in some material and significant way because of anticipated litigation when compared to those that occur with drivers in Stevens Transport's investigation and evaluation of claims in the ordinary course of business. For these reasons, Stevens Transport has not sustained its burden of

proof that the work-product privilege applies to Napolitano's description of the accident provided in his meetings with Tallent and Gandy.[1]

Accordingly, the Court GRANTS the motion to compel Napolitano, Gandy and Tallent to answer questions as to any description provided by Napolitano to Gandy and/or Tallent as to the manner in which the accident occurred and ORDERS that the deposition of Napolitano be re-opened solely for this purpose.

This is not a recommended ruling. This is an order regarding case management which is reviewable pursuant to the "clearly erroneous" standard of review. 28 U.S.C. § 636(b)(1)(A). As such, it is an order of the Court unless reversed or modified by the District Judge pursuant to a timely made motion. Fed. R. Civ. P. 72(a); D. Conn. L. Civ. R. 72.2.

SO ORDERED this 29th day of April, 2021, at Bridgeport, Connecticut.

                              */s/ S. Dave Vatti*
                              S. Dave Vatti
                              United States Magistrate Judge

---

[1] During a telephonic discovery conference conducted on April 26, 2021, the parties raised an issue that was not briefed. Apparently, upon involvement in an accident, Stevens Transport drivers receive an automatic notification from a QualComm tracking system to complete an accident package, including an accident report. In his deposition, Napolitano testified that he received this notification and that he believes he completed such a report. Counsel for Stevens Transport state that they have conducted a diligent inquiry, no such report exists, and, even if it did exist, it would be protected by work-product privilege. Based on the colloquy with the parties, it appears undisputed that the accident package, including the accident report to be completed, is automatically provided to all drivers who are in an accident. Thus, it is provided to and completed by the drivers in the ordinary course of business, rather than in anticipation of specific litigation. Accordingly, if Stevens Transport locates such a document completed by Napolitano, the Court finds that it is not protected by Fed. R. Civ. P. 26(b)(3) and Stevens Transport shall provide it to plaintiffs.